AO 91 (Rev. 11/82)

# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>NICHOLAS BISHOP,<br>also known as "Nick the Wrangler" | DOCKET NO. |
| | MAGISTRATE'S CASE NO.<br>17MJ 02435 |

Complaint for violation of Title 16, United States Code, Sections 3372(a)(2)(A), 3371(g), 3373(d)(1)(B); Title 18, United States Code, Sections 2(a), 2(b)

| NAME OF MAGISTRATE JUDGE<br>HONORABLE FREDERICK F. MUMM | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|

| DATE OF OFFENSE<br>Beginning on or about March 2, 2014 and continuing to on or about April 19, 2014 | PLACE OF OFFENSE<br>Ventura County | ADDRESS OF ACCUSED (IF KNOWN)<br>218 NE 12th Avenue, Apt. 202, Hollandale, Florida 33009 |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[16 U.S.C. §§ 3372(a)(2)(A), 3371(g), 3373(d)(1)(B); 18 U.S.C. §§ 2(a), 2(b) ]

Beginning on or about March 2, 2014 and continuing to on or about April 19, 2014, in Ventura County, within the Central District of California, and elsewhere, defendant NICHOLAS BISHOP, also known as "Nick the Wrangler," knowingly aided and abetted the purchase of a prohibited wildlife species, namely a tiger, by falsifying purchase records and caused the interstate transport of a prohibited species, namely a tiger, from the state of Indiana to the state of California, without obtaining the necessary documentation and permits required by the United States Fish and Wildlife Service and the United States Department of Agriculture Animal Plant and Health Inspection, in violation of Title 16, United States Code, Sections 3372(a)(2)(A), 3371(g), 3373(d)(1); and Title 18, United States Code, Section 2(a), 2(b).

FILED
CLERK, U.S. DISTRICT COURT
SEP 29 2017
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>STEPHANIE JOHNSON    /S/ |
|---|---|
| | OFFICIAL TITLE<br>Special Agent – United States Fish and Wildlife Service |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[1]<br>Frederick F. Mumm | DATE<br>September 29, 2017 |
|---|---|

[1] See Federal Rules of Criminal Procedure 3 and 54

AUSA Amanda M. Bettinelli x0470          REC: Detention/Arrest Warrant

## AFFIDAVIT

I, Stephanie Johnson, being duly sworn, declare and state as follows:

### I.    INTRODUCTION

1.    I am a Special Agent ("SA") with the Department of the Interior, United States Fish and Wildlife Service ("USFWS"), Office of Law Enforcement("OLE"), stationed in Torrance, California and have been so employed since June of 2011. I am authorized by the Secretary of the Interior to conduct searches and seizures and to make arrests, as authorized by law, pursuant to the Lacey Act, Title 16, United States Code, Section 3371 et seq.  I am an investigative law enforcement officer of the United States within meaning of Title 16, United States Code, Section 3375, and a federal law enforcement officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure.

2.    I was previously employed as a Refuge Officer with the FWS at the Wichita Mountains National Wildlife Refuge near Indiahoma, Oklahoma between 2008 and 2011, and as a Refuge Officer for the FWS at the Rocky Mountain Arsenal National Wildlife Refuge, in Commerce City, Colorado between 2004 and 2008.  I received a Bachelor's degree in Criminal Justice from the Metropolitan State University of Colorado in May of 2004.  I

am also a graduate of the Natural Resource Police Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia, and the USFWS Special Agent Basic School ("SABS") at the Federal Law Enforcement Training Center in Glynco, Georgia.

3.     During the last fifteen years, I have conducted several complex investigations involving the protection of natural resources and United States government property, and the interstate and international trafficking of wildlife.  Since my employment with the USFWS in 2011, I have conducted, or been involved in, multiple investigations relating to the illegal commercialization of protected fish and wildlife, and violations of federal fish and wildlife laws.

## II.     PURPOSE OF THIS AFFIDAVIT

4.     This affidavit is made in support of a criminal complaint against and arrest warrant for NICHOLAS BISHOP, also known as "Nick the Wrangler," for a violation of Title 16 U.S.C. § 3372, Title 18, U.S.C. §§ 2(a) (Aiding and Abetting the purchase and transport of a prohibited wildlife species), and 2(b) (Causing an Act to be Done).

5.     The facts set forth in this affidavit are based upon my personal observations, my training and experience, and/or information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there

is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III.   APPLICABLE LAW

6.   The Lacey Act 16 U.S.C. § 3371, et seq., is a federal law that, among other things, makes it unlawful for any person to sell, purchase, possess or transport wildlife and plants that were originally taken, possessed, transported, or sold in violation of any law, treaty, or regulation of the United States. 16 U.S.C. §§ 3372(a), 3373(d).  The Lacey Act also states that it is unlawful for any person to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce any prohibited wildlife species (subject to subsection (e) of this section).  16 U.S.C. § 3372 (a)(2)(C).

7.   The term "prohibited wildlife species" means any live specimen of lion, tiger, leopard, cheetah, jaguar, or cougar or any hybrid of such a species. 16 U.S.C. 3371 (g).

8.   The Lacey Act, statutory subsection (e) of 16 U.S.C. § 3372, provides for a few exceptions for individuals who are properly licensed, serve as wildlife rehabilitators and veterinarians, and who operate wildlife sanctuaries.

Specifically, subsection (a)(2)(C) does not apply to the importation, exportation, transportation, sale, receipt, acquisition, or purchase of an animal of a prohibited wildlife species, by the following individuals:

     a.   A person that is described as either a licensed or registered, and inspected, by the Animal and Plant Health Inspection Service ("APHIS") or any other Federal agency with respect to that species;

     b.   a State college, university or agency, State-licensed wildlife rehabilitator, or State-licensed veterinarian;

     c.   An accredited wildlife sanctuary that cares for prohibited wildlife species and is a corporation that is exempt from taxation under section 501(a) of Title 26 and described in sections 501(c)(3) and 170(b)(1)(A)(vi) of such title.  The sanctuary must not commercially trade in prohibited wildlife species, and must not propagate animals listed as prohibited wildlife species, and also does not allow direct contact between the public and animals;

     d.   A person who has custody of the animal solely for the purpose of expeditiously transporting the animal to a

person listed above. Title 16, United States Code, Sections 3772 (e)(1), (2).[1]

9.   Title 16, United States Code, Section 3373 (d)(1)(B) provides that any person who violates any provision of Title 16, United States Code, Section (a)(2)(C) by knowingly engaging in conduct that involves the sale or purchase of, the offer of sale or purchase of, or the intent to sell or purchase, fish or wildlife or plants with a market value in excess of $350.00 shall be imprisoned for not more than five years.

10.   Title 16, United States Code, Section 3373 (d)(1)(B) also provides that each violation shall be a separate offense and the offense shall be deemed to have been committed not only in the district where the violation first occurred, but also in any district in which the defendant may have taken or been in possession of the said fish or wildlife or plants.

11.   Pursuant to California State Fish and Game Code 14 § 671 (c)(2)(K), it is illegal to possess a tiger in the State of California without a permit.

---

[1] There is no statutory exception for transport by individuals who are not representatives of accredited wildlife sanctuaries providing care for prohibited species and who are engaged in the commercial sale and/or trade of prohibited species, such as tigers.

IV.    SUMMARY OF THE INVESTIGATION

12.    In early May of 2014, I began investigating a tiger cub that was found loose in a backyard of residential neighborhood in Ventura, California.  During the course of my investigation I learned that NICHOLAS BISHOP ("BISHOP") was the individual responsible for the purchase and transport of the tiger from Indiana to the Central District of California in violation of the Lacey Act.  Title 16, United States Code, Section 3372. A tiger is a prohibited wildlife species pursuant to Title 16, United States Code, Section 3371(g).  In an interview on April 19, 2014, BISHOP admitted to California Fish and Wildlife that he had purchased the tiger and arranged for transport to California.  BISHOP also admitted that he knew that it was illegal to possess a tiger in California without a permit.

13.    In a subsequent interview on March 17, 2015, BISHOP also admitted to USFWS agents that he lied on the United States Department of Agriculture ("USDA") form titled The United States Department of Agriculture Animal Plant and Health Inspection Record of Acquisition, Disposition and Transport of Animals that he completed on March 2, 2014 in order to purchase and transport the tiger from the Indiana Wildlife In Need Wildlife Indeed sanctuary. Specifically, BISHOP used a fake name "Mary Ann Fercos" to conceal his identity.

14.    BISHOP also told USFWS agents that he broke the law when he paid a friend to transport the tiger from his home in

Nevada to California.  BISHOP stated that he drove by himself to California and took a different route to avoid police detection.

15.  Based on my experience and training, the evidence in this case, including the initial statements made by BISHOP, the falsification of the documents at the Indiana facility by BISHOP, I believe that BISHOP aided and abetted the purchase of a tiger, a prohibited wildlife, and falsified records to conceal his identity, and caused the illegal transport of the tiger from Indiana to the Central District of California, and delivered the tiger to a residence in California to an individual who did not possess a permit, license, registration, or qualifications to legally purchase, transport, or possess a tiger, also known as a big cat, in the state of California.

## V.    SUMMARY OF PROBABLE CAUSE

16.  On May 2, 2014, I received information from FWS Special Agent Ed Newcomer that the California Department of Fish and Wildlife ("CDFW") had recently seized a live tiger and was requesting assistance with their investigation from the FWS.  I called CDFW Game Warden ("Warden") Jake Coombs and set up a meeting with him and his supervisor, Lieutenant Cindy Wood.

17.  On May 5, 2014, I met with Warden Coombs and Lt. Wood. During that meeting, Warden Coombs told me the following:

a.    On or about April 19, 2014, he received a call from his dispatch that a tiger had been reported in a

residential neighborhood.  The call had come from an individual who could see the tiger in the backyard of a house located at 2571 Bayshore Avenue, Ventura, California.  According to Warden Coombs, the neighbor said the tiger appeared to be attempting to get out of the back yard.  Attachment A.

b.    On that same day, Warden Coombs went to the Bayshore residence and learned that the tiger had been moved to a house in Piru, CA.

c.    Warden Coombs later told me that he remained at the Bayshore residence to conduct interviews with BISHOP and "D" Williams.

d.    Warden Coombs also told me that he had contacted two other California Fish and Wildlife wardens, Warden Brian Huber and Kevin Kintz, who went to the house 461 Marina Circle, Piru, California.  The residence was occupied by Andres Montejano and Pedro Montejana, the two men were brothers, and voluntarily escorted the wardens to the location of the tiger in in a shed in the backyard.  The tiger was held in a dog crate. Attachment B.

e.    After the tiger was found at the residence in Piru, the Warden Huber and Kintz seized the tiger and transported it to the Ventura Animal Control Center.  The tiger was housed there until it could be placed in a tiger sanctuary in southern California.  Attachment C.

f.    According to Warden Coombs, he needed to verify ownership of the tiger and no one claimed ownership.   On March 6, 2015, Warden Coombs told me that he had originally made two attempts to speak with the resident at the Bayshore residence on April 19, 2014.   Warden Coombs stated that after he received the first call from dispatch, he responded to the house but no one answered the door and he could not see any tigers in the back yard from the front door.   Warden Coombs told me that he returned later that day and conducted a traffic stop on an individual who was leaving the Bayshore house.   Warden Coombs identified the individual as Darryl Williams III, also known as "D.," the current resident of the house at Bayshore.

g.    During the traffic stop, Williams told Warden Coombs that he possessed a tiger but said that he had just transferred it to a "sanctuary".

18.   Warden Coombs told me that, on April 19, 2014, BISHOP arrived at the Bayshore residence, "D's house", and claimed ownership of the tiger.   According to Warden Coombs, BISHOP told him was worried that the tiger would be euthanized if no one claimed ownership.

BISHOP FIRST INTERVIEW, ON OR ABOUT APRIL 19, 2014

19.   On or about April 19, 2014, Warden Coombs interviewed BISHOP and told me that BISHOP said the following:

a.    In February BISHOP purchased the tiger for $1,500 cash from a facility in Indiana[2] at the request of Michael Ray Nguyen-Stevenson.  Michael Ray Nguyen-Stevenson is involved in the music industry and performs as a rapper under the alias "Tyga".

b.    BISHOP told Warden Coombs that he traveled to Indiana, purchased the tiger at the request of Tyga, and then drove with the tiger back to his residence in Nevada.

c.    At the time of purchase on March 2, 2014, BISHOP provided a false name on the paperwork for the tiger (later determined to be the name "Mary Ann Fercos"), but used his correct residential address in Henderson, Nevada.

d.    BISHOP told Warden Coombs that he was aware it was illegal to possess at tiger in California without a permit and that he did not want to travel with it into California.

e.    BISHOP told Warden Coombs that once he had the tiger at his home in Nevada, he called Michael Ray Nguyen-Stevenson (aka "Tyga"), who then personally drove to BISHOP's

---

[2] On or about May 19, 2014, I reviewed the sanctuary records for sales of tigers.  I verified that the Indiana sanctuary was named Wildlife In Need, Wildlife Indeed and that records did indicate that BISHOP had been to the Indiana sanctuary on March 2, 2014 and had written a personal check for a tiger in the amount of $500.  The USDA forms completed by BISHOP were listed in the sanctuary records and identified "Mary Ann Fercos" as the purchaser and BISHOP as the transporter of the tiger.  Based on my experience and training, it appears that the documentation maintained by the Sanctuary was falsified by BISHOP at the time he purchased the tiger and picked it up for transport.

home in Nevada to pick up the up the tiger purchased by BISHOP.
Tyga then took and drove the tiger from Nevada to the mansion
that Tyga was renting in Calabasas, California.

      f.    BISHOP told Warden Coombs that he was aware Tyga
had been building cages for the tiger in his house and later
admitted to help build the cages.  BISHOP also said that after
Tyga had possessed the tiger for a "few months", Tyga was afraid
of getting caught and asked some friends to "get rid of the
tiger".  Based on my experience and training, I understood that
BISHOP meant that Tyga was afraid of getting caught by law
enforcement for illegally possessing the tiger in his home.
Attachment D.

      g.    BISHOP told Warden Coombs that the tiger was then
given by Tyga to Darryl Williams, III, who is also known as "D".

    20.  On May 5, 2014, Warden Coombs told me that he
understood NICHOLAS BISHOP to acknowledge that he had personally
driven the tiger in a minivan from the Indiana sanctuary to
Henderson Nevada.  That same day Warden Coombs also told me that
he was going to pursue charges against the two individuals who
he had found in possession of the tiger in Piru, CA.[3]

---

    [3] On September 26, 2017, I reviewed the criminal history of
Andres and Pedro Montejano.  In addition, I reviewed the
conviction records from their court case in the Ventura County
Superior Court. I also reviewed a video recorded interview by
Warden Coombs of Andres Montejano on or about March 6,2015.  In
that video, Warden Coombs was told by Andres that they were

21.   On May 9, 2014, Warden Coombs emailed me a text message that BISHOP sent him of an image of a veterinarian certificate that reflected vaccines given to the tiger.  Listed for the breed of animal were the words "Tiger Bengal".  At the top of the paperwork was a box titled "Indiana County" with the words "Clark" written in.  According to Warden Coombs, he had found a facility called "Wildlife In Need, Wildlife Indeed" in Clark County Indiana that housed, among other animals, tigers.

22.   On May 22, 2014, I reviewed photos of the sanctuary records maintained by Wildlife In Need, Wildlife Indeed.  The photos of the sanctuary records were sent to me by FWS Special Agent Chris Ogle, who is stationed in Indiana.  SA Ogle told me these photos were taken by an individual with the USDA who had recently conducted an inspection at the Wildlife in Need, Wildlife Indeed facility and examined the records.  Based on my training and experience, it appeared that the tiger records had been filled out by BISHOP on March 2, 2014 when he purchased and picked up the tiger for transport in Indiana.

BISHOP FALSIFIED USDA FORMS WHEN PURCHASING THE TIGER

---

hired by ["D"] to pick up the tiger from his Ventura home and to transport it to the residence in Piru.  On April 20, 2014, they were charged with California Fish and Game Code 671.3(b)(2)(K)(6).  They pled guilty to an infraction of California Fish and Game Code 671(a)14 and were convicted on 08/12/2014.

23. On May 22, 2014, I reviewed the paperwork and learned that three tiger cubs were born at the Wildlife In Need, Wildlife Indeed facility in September of 2013. Of the three tiger cubs, there were two females and one male. I saw a photo of a United States Department of Agriculture Record of Acquisition, Disposition or Transport of Animals form listing the "buyer or receiver" as "Mary Ann Fercos" at the address of 2831 Dalsetter Drive, Henderson, NV 89044 on March 2, 2014.

FICTITIOUS NAME: "MARY ANN FERCOS"

24. On September 27, 2017, I checked the name "Mary Ann Fercos" through an open internet search and could not find a person associated with that name. I was unable to locate a record of that individual in the Transunion Information Database ("TLO") a law enforcement database that is used to identify and locate individuals throughout the United States. I was also unable to locate that name in association with any tiger sanctuary through an open internet search. During the course of this investigation, I learned that Mary Ann Fercos is not a real person. Based on my training and experience, I know that individuals engaged in wildlife crimes will use a fictitious name and prepare false records and/or documentation to conceal their identity and the crime.

INTERVIEW WITH MARY ANN SALAMA

25.  On or about September 27, 2017, I spoke to Mary Ann Salama an individual who possesses a APHIS tiger permit for a black panther.  I learned that she had met BISHOP one time years ago at an expo and he had a crocodile.  Salama told me that she knew him as "Nick the Wrangler" and had received a phone call from him three or four years ago.  BISHOP called her to ask if Salama would accept a donated tiger or purchase a tiger.  Salama said no.  Salama said that BISHOP asked for a copy of her USDA license and she refused to give it him.  Salama stated that she believed that BISHOP was contacting her about a tiger that was not located in the state of Nevada.  Salama also stated that she believed that BISHOP was using the Fercos name to purchase and move animals.  Salama also told me that she had never paid BISHOP to purchase, adopt, or transport a tiger for her.  In addition, Salama told me that she had never heard of the Indiana sanctuary Wildlife in Need Wildlife Indeed.  Salama said that BISHOP was a shady character and she had only met him one time.

26.  On or about May 6, 2014, I confirmed that the Dalsetter Drive address is listed on BISHOP's Nevada driver's license as his primary residence.  Upon checking the Dalsetter Drive address in the TLO database, I did not find anyone named "Mary Ann Fercos" who ever lived there.

27.  I also reviewed the bottom of the record and observed that written on the bottom of the same disposition document was

a signature, followed by the printed name "Nicholas L. Bishop"
and the word "Transporter" that appeared to be written in the
same handwriting.

### NO PERMITS WERE EVER ISSUED TO BISHOP, WILLIAMS, OR TYGA

28.   On September 28, 2017, I contacted Ann-Marie Holmes,
Senior Wildlife Inspector, who has access to the Service Permit
Issuance Tracking System ("SPITS") and she confirmed that no
permits to transport or purchase a tiger had ever been issued
to: NICHOLAS BISHOP, Darryl Williams, Michael Ray Nguyen-
Stevenson, aka "Tyga".

29.   On July 11, 2014, I received information from FWS SA
Ogle that a search for permits authorizing the handling,
possession and transport of live tigers had been conducted by
the USDA.  SA Ogle told me that neither BISHOP nor Tyga had any
permits to handle, posses, or transport large cats, also known
as tigers.

30.   On or about February 4, 2015, I conducted a search in
the TLO database for BISHOP and learned that he had a new
address in Miami, Florida.

31.   On February 18, 2015, I sent a request to the FWS
Office of Law Enforcement in Miami, Florida to conduct an
interview of BISHOP.

BISHOP SECOND INTERVIEW March 17, 2015

32.   On March 11, 2015, I was contacted by FWS SA Elvin Monge who told me he had located BISHOP and was planning to interview him.

33.   On March 17, 2015, SA Monge called me and told me that BISHOP agreed to be interviewed at the USFWS Miami office. Later that day, SA Monge called me after the interview and told me that BISHOP changed his initial story.

a.   BISHOP now claimed that he had already been looking for a tiger, and that after he purchased one to keep as a pet, Tyga contacted him and offered him $30,000 to keep the tiger at Tyga's house for several weeks.

INDIANA TIGER PRUCAHSED AND TRANSPORT TO CALIFORNIA

b.   BISHOP told SA Monge that when he purchased the tiger from Wildlife in Need, Wildlife Indeed, he paid $1,000 cash for the tiger and wrote facility an additional check for $500.[4]

c.   SA Monge asked BISHOP about the name "Mary Ann Fercos" and BISHOP replied that Mary Ann Fercos has a licensed facility in Nevada that rents exotic animals for photo shoots. BISHOP initially said that he used her name and discussed the

---

[4] On April 28, 2015, I obtained and reviewed a copy of the BISHOP check cancelled in the amount of $500 that was used to purchase the tiger.  The check was returned for insufficient funds.

purchase with her, but then later in the interview said that he never told her he was going to buy a tiger and use her information.

     d.   On that same date, SA Monge also told me that BISHOP told him that on the night Warden Coombs had discovered the tiger in Piru, California, Williams had tranquilized the tiger.  BISHOP also stated that Williams threw the tiger over the fence in his backyard.  BISHOP went on to say that an unknown individual in a white van picked it up.[5]

34.  On or about April 2, 2015, I reviewed the report that SA Monge had prepared from his interview with BISHOP.  I learned that BISHOP made the following statements:

     a.   BISHOP originally told SA Monge that he had consulted with Fercos prior to purchasing the tiger, he later said in the interview that he did not talk to or consult with her about the purchase.

     b.   BISHOP said he flew to Indiana and then rented a Hertz mini-van to transport the tiger.  He claimed that on his way to Nevada, he stopped in Kingman, Arizona where he let a friend play with the tiger. On July 30, 2015, I reviewed photos that had been posted to BISHOP's Facebook page and saw an image

---

[5] Based upon my review of all of the reports and evidence in this case, I have found no information to corroborate BISHOP's information pertaining to the tiger being thrown over the fence and picked by anyone other than Warden Coombs.  There is no street access from the backyard of that residence.

of BISHOP and the tiger and an individual referred to as "Cody" holding a Capybara.  Based on my experience and training, the tiger depicted in the BISHOP photos on Facebook appeared to be the same tiger that was picked up by Warden Coombs on or about April 20, 2014.  The image was posted on March 13, 2014 and contained the caption "@joejoe_the_capybara and Cody. Damn Capybara bit me in the arm.  And took off into the desert so we had to chase him down." Based on the posting that the statements BISHOP made about the desert, I believe this is the friend he stopped to see on his way to California.

c.   On March 15, 2015, BISHOP contradicted statements made to Warden Coombs on April 19, 2014, and stated that he had a friend drive the tiger from his house in Nevada into California.  BISHOP stated that he later met up with his friend, in California, picked up the tiger, and then personally transported it to Tyga's house [in Calabasas, California]. BISHOP did not indicate who his friend was.  BISHOP also said that he left the tiger at Tyga's house for several days.

d.   BISHOP then told SA Monge that he called his friend Williams to remove the tiger from Tyga's house.  BISHOP said that D Williams arrived at Tyga's house, picked up the tiger and put it in the back seat of his Dodge ram, and then

drove it to D William's house.[6]   BISHOP told SA Monge that D

Williams called him and asked him to come to his house while he

was questioned by Warden Coombs on or about April 19, 2014.

e.   During his interview with SA Monge, BISHOP stated

that he housed the tiger at the Hollywood Animal Rentals.   On

September 27, 2017, I called Eric Weld, the owner of Hollywood

Animal Rentals, and asked if he remembered housing a tiger

temporarily in 2014.   Weld stated that he did not, and said that

he does not temporarily house tigers for anyone who does not

have a permit.   He said that he remembered getting a call a few

years ago from a woman named Lee Shaw, the mother of a former

employee named Jett Shaw, stating that her neighbor in Ventura

was desperate to find a home for a tiger cub.   Weld said that he

informed her that he would not house it, and advised her to tell

her neighbor that they need to turn the tiger over to the

California Department of Fish and Wildlife.

TYGA PAYMENT TO BISHOP

f.   BISHOP told SA Monge that Tyga gave him $2,000

cash three weeks after the seizure of the tiger to cover all of

the expenses involving the maintenance and care of the tiger.

---

[6] During the course of my investigation, I verified that
Williams lived at 2571 Bayshore Avenue in Ventura, California.
This is the same address that law enforcement had received calls
regarding a tiger in the backyard of that house in a residential
neighborhood.

g.   SA Monge then showed BISHOP multiple images of
BISHOP and the tiger from BISHOP's Facebook page.   BISHOP
confirmed that the screenshots depicted photos he had taken on
his drive from the Indiana sanctuary to his home in Nevada.
Prior to the interview with SA Monge on March 17, 2015, I had
personally taken screenshots of BISHOP's Facebook page and
provided them to SA Monge.

35.   On March 6, 2015, I met with Warden Coombs and Captain
Wood again.   Captain Wood had since been promoted from
Lieutenant.   At that time, I asked them for more details about
the initial call Warden Coombs received and the response to the
report of the tiger.   Warden Coombs explained the following:

a.   In April of 2014, CDFW had received a complaint
about a tiger at a residence in Hidden Hills, CA, but no action
had been taken at that time.   Warden Coombs said that on April
19, 2014, he received the call from dispatch and then received a
text message from a confidential informant containing a photo of
the tiger that appeared to be standing in the backyard of a
residence in Ventura.

b.   After arriving at that residence in Ventura at
approximately 6:00 pm, he did not find anyone at home.   Warden
Coombs explained that from where he stood at the front door of
the residence, he was able to see into the backyard due to the

20

low height of the fence and verified that it was the same
backyard as the photo, but did not see a tiger in the yard.

### D WILLIAMS INTERVIEW ON OR ABOUT APRIL 19, 2017

c.   Warden Coombs stated that when he returned to the
Ventura residence later that evening, he made contact with
Williams, who admitted to possessing the tiger at the residence.
Williams explained that he had already had it transported
earlier that night to an animal shelter in Piru, CA.  Williams
admitted he had been home with the tiger when Warden Coombs had
first stopped at the residence earlier that day.  Subsequent
investigation revealed that Williams had lied to Warden Coombs
and had in fact directed Andres and Pedro Montejano to pick up
the live tiger from his residence on Bayview Avenue in Ventura
County and transport it elsewhere.  Later the tiger was found in
the shed at their residence in Piru, CA.

d.   After speaking with Williams, Warden Coombs
contacted Phil Smith, the owner of "Phil's Animal Rentals",
located in Piru, CA.  Warden Coombs was provided with the names
of two individuals, Andres and Pedro Montejano.  Warden Coombs
provided those names to Wardens Huber and Kintz, who interviewed
them on April 20, 2014.  I reviewed Warden Coombs's
investigative report of the interviews and learned that on April
20, 2014, Pedro Montejano told Wardens Huber and Kintz that they

were called by Williams to pick up the tiger from his residence
on Bayshore Avenue in Ventura.

TIGER OWNERSHIP

e.    I asked Warden Coombs about his interview of
BISHOP the night of the seizure on or about April 19, 2014.
Warden Coombs told me that while BISHOP initially did not want
to reveal Tyga's involvement in the case, BISHOP ultimately
admitted that the tiger found at the residence in Piru did in
fact belong to Tyga.

TYGA INTERVIEW ON MAY 1, 2014

36.    In the same interview on March 6, 2015, I asked
Captain Wood about her conversations with Tyga about the tiger
picked up from a private home in Piru, California.  Captain Wood
told me that, on May 1, 2014, she called Tyga and asked him
about the tiger.  Tyga denied having any knowledge of the tiger
and hung up on Captain Wood.

a.    Captain Wood said she called him back and Tyga
told her "that tiger was not taken from my house as the media is
reporting" and "I was not in the country when this whole thing
happened".

b.    Captain Wood then asked Tyga about all the photos
he had posted online with the tiger, Tyga claimed that he does
photo shoots and that the tiger was from a contract company.
Captain Wood told me that Tyga never provided the name of any

contract company and never produced any contracts for a tiger shoot.  I personally reviewed the photos on Tyga's Facebook page and saw multiple photos that of Tyga with different tigers. On September 27, 2017, I contacted Eric Weld with Hollywood Animal Rentals, who confirmed that he has rented tigers to Tyga for music videos in the past.

      c.   Tyga also told Captain Wood that she could talk to his attorney about the issue.  Captain Wood told me that Tyga never provided the wardens with his attorney's contact information.

    37.  On or about September 28, 2017, I contacted Eric Weld the owner of Hollywood Animals regarding tiger rentals by Tyga. On September 29, 2017, I learned that Tyga had rented three tigers from Hollywood Animals, specifically: 1) December 21, 2012, Tyga rented an adult tiger for a music video; 2) April 28, 2014, Tyga rented another adult tiger for a music video; and 3) June 26, 2014, Tyga rented a young tiger to shoot the pilot episode of his television show "Kingin with Tyga".  During the course of my investigation, I confirmed that the dates that Tyga rented a tiger from Hollywood Animals do not match the dates that the tiger cub that was purchased and transported by BISHOP to California.

    38.  On April 28, 2015, I received a copy of the check used by BISHOP to pay the Indiana facility "Wildlife in Need" $500 on

March 2, 2014.  According to the initial photos of records I
received from SA Ogle, the date of the check (March 2, 2104)
corresponds with the time that the male Bengal tiger was
purchased, picked up, and transported from the Indiana facility.
In his interview with SA Monge on March 15, 2015, BISHOP said
that he paid $1,000 cash for the tiger and provided a $500 tip
with a check.

39.  On May 28, 2015, I went to 2571 Bayshore Ave, Ventura,
CA in an attempt to located Darryl ("D") Williams.  When I
arrived, I saw that the front of the house was a gated driveway
into a garage, and a large wall that ran along the front of the
house and connected with the house next door.  In the middle of
the wall was a door, which I initially presumed was a front
door.  When I approached the door, I found that it was cracked
open and led to an interior patio area with a wall and two doors
with addresses listed on them on the left side of the patio.
From the patio, I could see directly into the backyard, which I
saw was completely surrounded by other backyards as the fence
was only, in my estimate, about four feet tall.  There was no
road or walkway between the yards.

40.  On that day, I spoke with an individual named Sam
Moss, who was living at the house.  He told me that he did not
know Williams, but said that he believed Williams was the
previous renter.

a.    As noted in the attached photos, On March 17, 2015, BISHOP told SA Monge that "D" had tranquilized the tiger at the residence, thrown the tiger over the fence, and that a person in a white van picked up the tiger.

b.    While I was at the residence, I observed that it would have been impossible to throw a tiger over the fence for "someone to pick up", as it would merely land in another neighbor's yard.  I also noticed that throwing the tiger over the front fence would have only put it onto the patio, and it was not possible to throw it over the front wall, as the house stretched over the patio and connected with the front wall.

c.    I also observed that the area was a residential neighborhood with a low yard fence, approximately four feet, and I know that a tiger could have easily escaped the backyard and entered the yards of nearby residents in the neighborhood, including those with young children.

SANCTUARY IN SAN DIEGO

41.  On July 8, 2015, I went to the sanctuary where the tiger had been placed.  I met with the owner of the sanctuary and I was shown the intake records for the tiger.  I was also able to take photos of the tiger.

42.  During my interview of the owner, I learned that for several months after they had initially obtained the tiger, they received multiple calls from someone who identified himself as

Darryl Williams.  Williams told the owner that he was the
trainer for the tiger and that the tiger belonged to Tyga.

43.  The owner told me that at one point, in the year 2015,
Williams showed up at the facility.  Williams became belligerent
with the owners when he was not allowed to have physical contact
with the tiger taken from the Piru, California residence.
Williams was later banned from the facility.

44.  On April 11, 2016, I again visited the sanctuary
housing the tiger and observed as a veterinarian drew blood from
the tiger. I then collected the blood and sent it to the FWS
National Fish and Wildlife Forensic Lab for analysis.  I later
received and reviewed results on June 15, 2016 confirming that
the blood originated from a tiger, which is a prohibited
wildlife species.

45.  Based on my experience and training, the evidence in
this case, including the initial statements made by BISHOP, the
statement made by Williams to the sanctuary, the falsification
of the documents at the Indiana facility by BISHOP, the Facebook
photos, and the cancelled check to Wildlife in Need, Wildlife
Indeed, I believe that BISHOP aided and abetted the purchase of
a tiger, a prohibited wildlife, and falsified records to conceal
his identity, and caused the illegal transport of the tiger from
Indiana to Los Angeles County, California, and delivered the
tiger to Tyga's residence in Calabasas, CA who did not possess a

permit, license, registration, or qualifications to legally
purchase, transport, or possess a tiger, also known as a big
cat, in the state of California.

### VI.   CONCLUSION

46.   For all the reasons described above, there is probable
cause to believe that BISHOP committed a violation of Title 16
U.S.C. § 3372, Title 18, U.S.C. §§ 2(a) (Aiding and Abetting the
purchase and transport of a prohibited wildlife species), and
2(b)(Causing an Act to Be Done).

_____/s/_____
STEPHANIE JOHNSON, Special
Agent, USFWS

Subscribed to and sworn before me
this __29$^n$__ day of September, 2017.

Frederick F. Mumm
_____
HONORABLE FREDERICK F. MUMM
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

Tiger in Backyard at D Williams, Bayshore Avenue residence



## ATTACHMENT B

Tiger in Crate at Piru California residence



<u>ATTACHMENT C</u>

Tiger at Animal Control facility in Ventura, CA



## ATTACHMENT D

Tiger cub caged inside Tyga's house

